**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **ZAYO GROUP, LLC** | ) | |
| **1805 29th Street, Suite 2050** | ) | |
| **Boulder, CO 80301** | ) | |
| | ) | **Civil No. _____** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **OHIO DEPARTMENT OF** | ) | |
| **TRANSPORTATION** | ) | |
| **1980 West Broad Street** | ) | |
| **Columbus, OH 43223,** | ) | |
| | ) | |
| **JACK MARCHBANKS – Director of the** | ) | |
| **Ohio Department of Transportation, in** | ) | |
| **His Official Capacity,** | ) | |
| **1980 West Broad Street** | ) | |
| **Columbus, OH 43223.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>**ZAYO GROUP, LLC'S VERIFIED COMPLAINT**</u>
<u>**FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

Plaintiff Zayo Group, LLC ("Zayo"), files this Verified Complaint for injunctive and declaratory relief against Defendants Ohio Department of Transportation ("ODOT"), and Jack Marchbanks, in his official capacity as Director of the Ohio Department of Transportation ("Marchbanks," collectively, "Defendants" or "Ohio") and alleges as follows:

**<u>INTRODUCTION</u>**

1.      This lawsuit is déjà vu.  For the second time in as many years, Zayo has been forced to sue Ohio and seek injunctive relief to prevent the state and its elected officials from causing it, its customers, and the public irreparable harm by enforcing a newly-minted and hopelessly unlawful discriminatory, pay-to-play access moratorium singling out Zayo.

2.      Zayo provides vital bandwidth infrastructure and telecommunications services throughout Ohio to customers providing essential services: hospitals and medical research institutions, financial institutions, utilities, and other communications providers, among other customers.  These services are vital to Ohio communities and citizens, and even more so now during the global pandemic.

3.      In order to construct, maintain, and operate its networks and facilities to deliver these essential services, Zayo – like every other communications provider – must have reasonable and efficient access to public rights of way.  But ODOT has once again erected unreasonable procedural barriers that have made it impossible for Zayo to obtain such access.

4.      The only difference this time is that Ohio's policy to prohibit Zayo from expending substantial time, effort, and risk capital to deploy telecommunications facilities to provide essential services in the state comes during a global pandemic that has served as an object lesson in the critical importance of broadband telecommunications services.

5.      It is apparent that Ohio's bureaucrats – in defiance of state policy – remain focused on cashing in on the public rights of way at the expense of Ohio's telecommunications providers and the businesses and residents they serve.

6.      As happened two years ago, Ohio has once again stalled granting right-of-way permits that Zayo submitted *years ago*. This substantial delay allowed Ohio enough time to gin up a policy to sell it access to public ways and then retroactively enforce it against Zayo.  Zayo previously challenged the lawfulness of essentially the same policy in this Court in 2019.  And in telling fashion, Ohio promptly withdrew the policy and granted Zayo's permits in September 2019 after an initial status conference.

7.    With the history of the prior litigation in mind, Zayo sought to avoid another round of costly and time-consuming litigation, repeatedly seeking to work with ODOT to gain timely access to public rights of way essential to provide vital communications services and meet contractual commitments to its customers.

8.    In "reviewing" Zayo's permit applications, however, Defendants have engaged in a repeated pattern of delay, chronic inaction, and constructive denials of Zayo's permits that amounts to a *de facto* moratorium on the issuance of permits to Zayo for the construction, operation, and maintenance of critical telecommunications facilities.

9.    Rather than having reconsidered its flawed position in light of the last litigated outcome, Ohio apparently was just buying time to haphazardly draft and apply it again against Zayo.  Rather than engage with Zayo, or grant its permits under the currently operative process, ODOT gave Zayo the runaround while it secretly re-adopted essentially the same position Zayo had previously challenged.

10.    When finally pressed for a decision on Zayo's stale permits by undersigned counsel, ODOT suddenly announced and retroactively applied an entirely new policy: the agency would only grant Zayo's longstanding permits if it agreed to share its own facilities with the state or paid steep annual fees far in excess of any conceivable costs to manage the rights of way. Zayo's best estimate is that Ohio is demanding that it pay nearly a million dollars per year for the common privilege of accessing the public rights of way.

11.    Upon information and belief, Ohio's fees also are apparently to be borne by Zayo alone: Ohio has not applied its new policy to a single other telecommunications provider.  In a move that seriously distorts the competitive landscape, ODOT has ostensibly allowed other

providers – Zayo's similarly-situated direct competitors – to access the same rights of way for *free*.

12.     Ohio's policy is no more lawful this time around than when it tried to enforce it against Zayo two years ago, and consequently the company has more than a substantial likelihood of prevailing on the merits of its claims. Ohio's policy effectively prevents Zayo from providing interstate and intrastate telecommunications services in reliance on the public rights of way in direct violation of federal law.

13.     Nor can Ohio discriminate against Zayo by giving preferred treatment to its direct competitors in its management of the rights of way or holding Zayo's access to them hostage for a ransom with no connection to its costs of managing the rights of way. Federal law strictly forbids Ohio from using the public streets as a profit center as is the transparent goal of its new policy. Ohio also denied Zayo due process by secretly adopting and then immediately enforcing a new policy on permit applications that had been pending for years.

14.     Without preliminary relief barring Ohio's retroactive enforcement of its new policy, Zayo and its customers will suffer irreparable – indeed catastrophic – harms. Zayo will be unable to provide critical communications services to governmental entities, businesses, financial institutions, and other telecommunications carriers. If Zayo cannot provide service, or meet looming build out requirements, it will lose customers and suffer irreparable harms to its good name, reputation for reliable and dependable telecommunications services, market position and competitive standing, and goodwill. Zayo will also be put at a severe competitive disadvantage while its direct competitors enjoy timely access to public rights of way without incurring massive additional operational costs.

15. The balance of harms and the public interest also tilt strongly in favor of grating Zayo injunctive relief. Ohio will not suffer any harm if it cannot enforce an unlawful policy that flies in the face of longstanding national telecommunications policy and laws.

16. At the same time, preliminary relief will promote the public interest by allowing Zayo to provide critical communications services to customers that provide essential services to Ohio residents and businesses – including access to first responders and vital health services.

17. Zayo needs immediate injunctive relief to enjoin Ohio from enforcing its discriminatory, pay-to-play moratorium to deny Zayo reasonable and timely access to public rights of way. The Kafkaesque and unlawful framework to which ODOT has subjected Zayo for the last two years must end.

## PARTIES

18. Plaintiff Zayo is a global provider of bandwidth infrastructure and telecommunications services.

19. Zayo provides services throughout Ohio to a variety of hospitals and medical research institutions, financial institutions, utilities, and other communications providers, among other customers.

20. Zayo is a Delaware limited liability company with its principal place of business in Colorado. Zayo Group Holdings, Inc., is the ultimate parent company and member of Zayo. Zayo Group Holdings, Inc., is a Delaware company with its principal place of business in Colorado.

21. Since 2009, Zayo has held a Certificate of Public Convenience and Necessity issued by the Public Utilities Commission of Ohio ("PUCO") to provide telecommunications services in Ohio. *See* Exhibit ("Ex.") A, at 1.

22.     Defendant ODOT is a department of Ohio's state government charged with, among other things, granting permits to private entities, including telecommunications providers, to use or occupy public rights of way or roads or highways under its management.  To use such rights of way, telecommunications providers are required to obtain permits from ODOT.

23.     Defendant Jack Marchbanks is the Director of ODOT.  In his official capacity as Director, Ohio law grants Marchbanks the power to issue permits for access to any public right of way that is consistent with federal law or federal regulations.

## JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Zayo asserts claims arising under the laws of the United States.  Zayo asserts claims against Defendants for violations of federal law.

25.     The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

26.     Zayo is a limited liability company, and as such, has the citizenship of its members.  *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010).

27.     None of the members of Zayo are citizens of Ohio or maintain their principal place of business in Ohio.

28.     Defendants are an agency and officer of Ohio's government and thus citizens of Ohio for diversity jurisdiction purposes.

29.     The parties are therefore diverse for jurisdictional purposes.

30.     The amount in controversy also far exceeds the sum or value of $75,000.  *See* 28 U.S.C. § 1332(a).  Through their violations of federal law, Defendants have blocked Zayo's

deployment of telecommunications networks and facilities and jeopardized its customer goodwill and competitive position, all of which far exceed the jurisdictional minimum.

31.     Defendants are subject to the general personal jurisdiction of this Court because they reside in Ohio.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## LEGAL AND REGULATORY BACKGROUND

**A.      Federal Law Mandates Reasonable Access To Public Rights Of Way To Ensure Timely, Efficient, And Cost-Effective Deployment Of Advanced Communications Services.**

33.     Access to public rights of way by communications providers is carefully regulated by federal law and policy to ensure that providers can access rights of way on reasonable and nondiscriminatory terms and conditions, which is critical for timely, efficient, and cost-effective deployment of advanced communications networks and services, including the installation of fiber-optic telecommunications networks.

34.     The federal Telecommunications Act of 1996 ("1996 Act") amended the federal Communications Act ("Act"), *see* 47 U.S.C. § 151, *et seq*., "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies."  Pub. L. No. 104-104, 110 Stat. 56 (1996).  In passing the 1996 Act, Congress intended for market competition – *not* state or local regulation – to determine which companies

would provide telecommunications services that consumers desire. *See, e.g.*, *In re Classic Tel., Inc.*, 11 FCC Rcd. 13082, 13095–96, at ¶ 25 (Oct. 1, 1996).

35.     Recognizing that communications providers face many barriers to entering and competing effectively in that open market, Congress enacted Section 253 of the 1996 Act to "preempt[ ] state and local regulations" and actions that impede competition among telecommunications service providers. *Sprint Telephony PCS L.P. v. Cnty. of San Diego*, 543 F.3d 571, 576 (9th Cir. 2008); *see AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371 (1999). The statute's text is explicit: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

36.     That statute further requires state governments to "manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government." *Id.* § 253(c).

37.     These federal requirements foster expansion of available telecommunications services and promote the fair, reasonable, and nondiscriminatory access to rights of way and similar infrastructure that enable telecommunications service providers to offer advanced services.  Indeed, Congress has focused on ensuring competition and "reduc[ing]" regulatory burdens to deploying broadband and telecommunications facilities.  Pub. L. No. 104-104, 110 Stat. 56 (1996); *see AT &T Corp.*, 525 U.S. at 371 (noting that Section 253(a) of the 1996 Act ensures states "may no longer enforce laws that impede competition").

38.     Residential and business consumers are the ultimate beneficiaries of these federal requirements and policies as they promote timely and efficient deployment of services.

**B.     ODOT Permits Telecommunications Providers Use Of Rights Of Way Maintained By The State.**

39.     Similar to Congress, and other states, the Ohio Legislature has placed a premium on the reduction of regulatory burdens that hinder the efficient deployment of broadband and telecommunications facilities in the State.  *See* Ohio Rev. Code § 1332.02 (declaring it the public policy of Ohio to advance pro-competitive policies and "enhance the development and widespread use of technological advances" in the provision of cable and broadband services).

40.     ODOT is regulated under Chapters 5501 and 5515 of the Ohio Revised Code. Among other powers and duties, ODOT shall "[e]xercise and perform such other duties, powers, and functions as are conferred by law on the director, the department, the assistant directors, the deputy directors, or on the divisions" of the department.  Ohio Rev. Code § 5501.03(A)(1).

41.     ODOT is specifically responsible for the coordination and development of a "comprehensive and balanced state policy and planning to meet present and future needs for adequate transportation facilities" in Ohio.  *Id.* § 5501.03(A)(2).

42.     Under the Revised Code, "transportation facilities" includes "all publicly owned modes and means of transporting people and goods, including,  . . . but not limited to . . . rights-of-way."  *Id.* § 5501.01(A).

43.     "Right-of-way" is defined as "[a] general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes."  Ohio Rev. Code § 4511.01(UU)(2); *see id.* § 5501.01(D).  "Right-of-way" further includes the "roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority."  *Id.* § 4511.01(UU)(2).

44.     "Telecommunications service provider" is defined as "an entity that, for a fee, provides telecommunications services, including, but not limited to, voice, data, interactive or two-way telecommunications services, without regard to the way such services are delivered." *Id.* § 5501.01(E).

45.     "Telecommunications facility" is defined as "a facility for the provision of telecommunications services.  The facility may include, but is not limited to, a tower, monopole, antenna or other ancillary equipment, or buildings used to deliver telecommunications services." *Id.* § 5501.01(F).

46.     The Director of Transportation – Marchbanks – "shall have general supervision of all roads comprising the state highway system" and is responsible for overseeing ODOT.  *Id.* § 5501.31.

47.     Section 5515.01 of the Ohio Revised Code prescribes general provisions applicable to all permit applications made to ODOT.  Specifically, Section 5515.01 provides that "[t]he director of transportation may upon formal application . . .  grant a permit to any individual, firm, or corporation to use or occupy such portion of a road or highway on the state highway system as will not incommode the traveling public."  *Id.* § 5515.01.

48.     In pertinent part, the director may issue a permit "for any use of a road or highway on the state highway system that is consistent with applicable federal law or federal regulations."  *Id.* § 5515.01(A).

## FACTUAL ALLEGATIONS

**A.     Zayo Must Have Reasonable And Timely Access To Ohio's Public Rights Of Way To Deploy Essential Telecommunications Facilities.**

49.     Zayo has constructed, maintains, and operates a telecommunications network throughout Ohio.

50.     To build, operate, and maintain its network, Zayo depends upon reasonable access to public rights of way in Ohio to deliver valuable and critical communications services to a wide range of governmental and private industry customers located throughout Ohio.

51.     Zayo provides telecommunications services pursuant to a Certificate of Public Convenience and Necessity issued by PUCO in 2009.  Ex. A, at 1.

52.     Zayo's customers include medical facilities and hospitals, first responders, financial services institutions, cloud-computing and data center providers, the State's research and education network, and carriers of cellular telephone service that in turn use Zayo's services to meet critical communications needs, including access to first responders and other health and public safety providers.

53.     To provide service, Zayo must have reasonable and timely access to public rights of way.  Zayo is solely responsible for the costs and expenses associated with the deployment of its fiber-optic networks, including but not limited to the design, construction, installation, management, operations, repair/restoration, and all maintenance.

54.     ODOT does not bear any costs related to Zayo's fiber-optic projects other than relatively minor administrative costs associated with permit and design reviews and inspections. For Zayo to deploy its network in the public rights of way, Zayo must first obtain a valid permit from ODOT to use or occupy them.

55.     Zayo is prohibited from beginning any construction within a public right of way unless and until ODOT has granted a permit for access to the specific public right of way.

**B.      Defendants Have Repeatedly Flouted Federal Law And Discriminated Against Zayo In Carrying Out The Permit Application Process.**

56.     ODOT has refused to act on Zayo's permit applications for access to public rights of way within a reasonable timeframe so it could adopt and impose a policy to sell it access.

57.    Indeed, on several occasions, Defendants failed to act on Zayo's pending permit applications *for years*, and in doing so, constructively denied them.

58.    Upon information and belief, at the same time Ohio denied Zayo reasonable access, ODOT permitted other providers, including Zayo's direct competitors, to access and maintain facilities in the same rights of way—presumably without having to share their facilities or retroactively pay massive fees.

59.    Ohio's discriminatory, pay-to-play moratorium operates to benefit Zayo's competitors at its expense.

60.    Zayo tried to work with Defendants amicably to resolve the delays that its permits were subject to, but Defendants refused meaningfully to engage or offer any reasonable basis for their failures to act.

61.    Because Defendants' unreasonable and unlawful conduct seriously impaired its ability to serve its customers, Zayo was previously forced to file suit to vindicate its rights, avoid grave and irreparable harms, and obtain long overdue access to public rights of way.

62.    When Ohio first enforced its discriminatory, pay-to-play moratorium against Zayo two years ago, the company promptly sued in this Court, seeking, among other things, declaratory and injunctive relief.  *See Zayo Group, LLC v. Ohio Department of Transportation, et al.*, No. 2:19-cv-3705 (S.D. Ohio Aug. 26, 2019).

63.    In that case, Zayo challenged Ohio's "InnovateOhio" program, which was intended to extract undisclosed "market rates" from telecommunications providers dependent on access to the public rights.  *See Zayo I*, ECF No. 1, ¶¶ 83–84 & 117.

64.     While the goal of program was clear – extract vast sums from telecommunications providers for accessing public rights of way – Ohio identified no standards for permitting access to public rights of way.

65.     In effect, the InnovateOhio program served as a pretext for ODOT to hold Zayo's permit applications hostage while it sought a ransom.

66.     Given that it faced mounting and irreparable harms from Defendants' permitting moratorium, Zayo moved for injunctive and declaratory relief in the *Zayo I* proceedings.

67.     Before the Court could address Zayo's motion for preliminary relief, however, ODOT suddenly granted all of Zayo's outstanding permits.

68.     While ODOT granted the permits to moot the lawsuit, Ohio apparently did not actually abandon the underlying challenged policy – as it has revived it in new form to, once again, deny Zayo reasonable and timely access.

**C.      Defendants Have Once Again Imposed A Discriminatory, Pay-To-Play Moratorium On Zayo To Deny Its Permit Applications.**

69.     Despite Zayo previously having to resort to costly and time-consuming litigation to force Defendants to comply with federal laws, Defendants are once again engaging in the same unlawful conduct that gave rise to its previous lawsuit.  And once again, that conduct is causing Zayo severe and irreparable harms.

70.     In January 2020, Zayo first approached ODOT about proposed deployments of 260 miles of fiber-optic cabling within public rights of way.

71.     Zayo submitted right of way permit applications for 17 sites under ODOT's jurisdiction on January 24, 2020, and February 5, 2020.  Ex. B, at 7.  Several of these sites were located in areas designated as limited access highways.[1]

72.     Several months passed without ODOT acting on Zayo's permit applications.

73.     On December 17, 2020, Zayo's Vice President of Underlying Rights, Gillian Leytham, sent a letter to ODOT inquiring about the status of its applications and sought authorization to deploy its facilities in the requested routes.  Exs. A & C, at 25–26.

74.     In doing so, she identified requested routes where ODOT had permitted Zayo's competitors to install their facilities.  Ex. A, at 5–6.

75.     ODOT did not respond to Zayo's December 17, 2020, letter.

76.     On January 6, 2021, Ms. Leytham followed up on Zayo's December 17, 2020, letter and further requested a meeting with ODOT.  Ex. C, at 24.

77.     Later that same day, ODOT promised to coordinate with relevant officials to arrange a meeting.

78.     ODOT never timely responded or proposed a meeting time.

79.     On January 18, 2021, Zayo again emailed ODOT for a meeting to discuss its permit applications.  *Id.* at 22–23.

80.     Zayo explained that, by holding its applications in limbo, ODOT was preventing it from serving customers and meeting contractual buildout commitments.  *Id.* at 22.

81.     ODOT never responded.

---

[1]  A "limited access highway" is defined as "a road, highway, or street, especially designed for through traffic, over which abutters have no easement or right of access by reason of the fact that their property abuts upon such highway intersections designated by the director of transportation, board of county commissioners, or municipal authorities on roads within their jurisdiction, so as to eliminate cross traffic of vehicles."  Ohio Rev. Code § 5535.02.

82.     On January 29, 2021, Zayo again requested a meeting reminding ODOT that it had authorized Zayo's direct competitors to access the same rights of way to which it now sought access.  *Id.* at 20.

83.     At that time, Zayo alleged that ODOT's actions were in service of a "moratorium" on the company's applications and invited it to explain its refusal to grant its permits or engage with Zayo to address them.  *Id.*

84.     ODOT did not respond to Zayo's invitation.

85.     On February 2, 2021, Zayo again contacted ODOT, including its legal department, to request action on its permit applications.  *Id.* at 18–19.

86.     Between February and August 2021, Zayo repeatedly contacted ODOT to address the "continued lack of progress" on its applications, which, it asserted, violated federal law.  *Id.* at 18.

87.     Zayo explained that it was "not being treated in a competitively-neutral and nondiscriminatory way" because other providers were "allowed to deploy in limited access [rights of way]" while it was denied access.  *Id.* at 19. While the delays and inaction continued, Zayo continued to face pressures and concerns about being able to meet buildout requirements and satisfy current and prospective customer demands.  *Id.* at 16.

88.     On February 3, 2021, ODOT finally responded to Zayo regarding its December 17, 2020, letter.

89.     ODOT told Zayo to resubmit its permit applications.

90.     Following ODOT's instructions, Zayo resubmitted all of its permit applications.

91.     Even after it did so, however, ODOT still refused to act on Zayo's permit applications or respond to Zayo's many requests for status updates and information.

-15-

92.     Zayo submitted one additional permit application on May 6, 2021.  Ex. B at 7.

93.     From June until August 2021, Zayo repeatedly reached out to ODOT to meet regarding its permit applications.  But ODOT never agreed to a meeting and ignored its requests.

94.     Then, on August 12, 2021, ODOT contacted Zayo by telephone and promised to respond to its multiple emails and contacts.

95.     The next day, Zayo emailed ODOT to follow up on ODOT's phone call and requested a meeting to discuss the permit applications.  Ex. C, at 16–17.  ODOT did not respond to Zayo's request.

96.     Without any action on its permits, or engagement by ODOT, on August 16, 2021, Zayo was left to provide ODOT with a "Moratorium Violation Notice" informing the agency that its inaction on Zayo's applications constituted a "de facto moratorium in violation of federal law."  *Id.* at 14–15 & Ex. D, at 1–2.

97.     Zayo explained it wanted to resolve the dispute amicably, but Defendants' failure to act on its applications and requests for nearly two years had harmed its competitive position and left "[c]onsumer access to services hang[ing] in the balance."  Ex. C, at 16.

98.     Zayo asked ODOT to end its *de facto* moratorium and immediately approve Zayo's pending permit applications.  Zayo also asked ODOT to respond to its request within three business days.  Ex. D, at 1–2.

99.     On August 20, 2021, ODOT responded that Zayo's applications supposedly contained "inconsistenc[ies]" about its proposed routes and presented "limited" information about the "use and operation of fiber" to be installed at each location.  Ex. C, at 6–9.  ODOT therefore requested additional information to address their "issues" with Zayo's applications.

100.    ODOT also "advised" Zayo that it was developing a new licensing program for providers to access and use rights of way only after paying "compensation." *Id.* at 9

101.    In October 2021, Zayo provided ODOT with the requested information. Ex. B.

102.    Yet another month passed without ODOT acting on its permit applications or even indicating any timeline for doing so.

103.    As a result, on October 29, 2021, Zayo's counsel and ODOT met to discuss the outstanding permits. At that time, ODOT promised to render a decision on Zayo's permit applications by Wednesday, November 3, 2021. Yet, on November 3, 2021, ODOT and its counsel stated they needed more time and would act on the following day. Ex. E, at 2.

104.    On November 4, 2021, ODOT announced a new "fee-based licensing" policy that it applied retroactively to Zayo's long-pending permit applications. Ex. F, at 1.

105.    According to this new policy, for "telecommunications providers" to install fiber optic cables and conduits along any "non-interstate, limited access state highway right of way" they must agree to pay, in Ohio's sole discretion some form of "preferred consideration" or "shared resources." *Id.*

106.    ODOT can grant access in exchange for "preferred consideration," which is "shared resources within a given proposed fiber network installation." The term "shared resources" is undefined and supposedly relates to "sharing conduit or dark fiber resources with ODOT for transportation services." ODOT has sole discretion to determine whether such resource sharing is sufficiently "beneficial" to warrant access to a right of way. *Id.*

107.    If ODOT determines there is no potential "benefit" for "shared resources" in the proposed installation and access to the right of way, however, it "may identify" other locations where a "need for use and benefit to be gained from shared resources" exists and allow access to

a requested right of way "in exchange for receiving beneficial resource sharing" in another location. *Id.* at 1–2.

108.    But if ODOT finds no "potential beneficial shared use" in the proposed installation or other planned installations, it may "reserve[ ] a right of access to the proposed fiber installation for future shared beneficial use." *Id.* at 2.  And if ODOT determines there is no potential benefit in resource sharing in any location, it may then "charge and collect an annual fee" of $12,000 "per conduit per mile." *Id.*

109.    At the same time ODOT announced its new policy, it applied it retroactively to Zayo's long pending permit applications.  ODOT thus announced the parties had to agree on an "appropriate licensing arrangement," but declined to offer any timeline for decision on a suitable arrangement.  Ex. G, at 2.  While ODOT also offered to grant Zayo's permit applications, it did so on the condition that Zayo agree to accept a license arrangement – one that would be finalized, of course, after Zayo's facilities were captive in the rights of way.  And although ODOT's new policy purportedly applies only to permits for limited-access rights of way, Ohio has applied the policy to *all* of Zayo's pending permit applications, including those seeking access to non-limited access rights of way.

110.    ODOT thus presented a Hobson's choice: It can either accept a conditional approval of its permits with no indication of what that approval will ultimately cost Zayo, or it can fail to meet its contractual obligations and commitments to customers across Ohio.

111.    ODOT's new policy also comes amid serious efforts by governments at all levels to adopt pro-broadband policies designed to remove regulatory and other barriers to timely and cost effective deployment of telecommunications infrastructure.

112.    On information and belief, Ohio has not applied this policy to a single other telecommunications provider, or put one to this impossible choice.

113.    The annual fee is supposedly "supported" by a KPMG study that ODOT has not published or provided with its new policy. Ex. F, at 2–3. The policy does not provide any backing or support for the annual fee amount, or any other details from the KPMG study.

114.    Defendants' conduct operates as a constructive denial of Zayo's permit applications and a *de facto* moratorium on granting Zayo's permits to access rights of way.

**D.    Defendants' Unlawful Conduct Threatens Severe And Irreparable Harm To Zayo, Its Customers, And The Public.**

115.    Ohio's refusal to grant Zayo reasonable and timely access to the rights of way necessary for it to extend service to customers is already causing severe and irreparable harms and threatening to cause more catastrophic harms if it cannot obtain access soon.

116.    Ohio's moratorium has prevented Zayo from providing mission-critical telecommunications infrastructure and services to current and prospective customers in Ohio. And if it persists, millions of customers, including public safety agencies, will be unable to receive critical communications services.

117.    As shown by their recent "decision" on Zayo's applications on November 4, 2021, Defendants have strung Zayo along with no intention of ever granting its permit applications based on a *de facto* moratorium targeting Zayo – just like they did in the recent past.

118.    Defendants have further attempted to justify their discrimination and moratorium because they are implementing a new policy under which Ohio would be able to monetize its limited access rights of way. There was no such policy in place when Zayo initially applied for its permits in early 2020.

-19-

119.   After 18 months of sitting on Zayo's permit applications and promising a decision, Defendants constructively denied Zayo's applications under the guise of implementing a retroactive policy which would allow Defendants unilaterally to decide whether to force Zayo to share its telecommunications resources or pay a massive, non-cost-based, and arbitrary fee to install its fiber optic cables and telecommunications infrastructure.

120.   Indeed, Defendants have offered no foreseeable completion date for Zayo's permit applications to be approved under its new policy and seek to coerce Zayo into accepting one-sided, unilateral, and exorbitant compensation terms in exchange for conditionally granting its permit applications.

121.   Thus, the basis for ODOT's *de facto* moratorium on Zayo's permits is the same as in *Zayo I* – to implement another unreasonable and lucrative program to condition Zayo's access to rights of way on payment of amounts far in excess of any costs to manage the rights of way.

122.   The combination of Defendants' constructive denial of Zayo's permits, the *de facto* moratorium on right of way permits, and the rollout of the new policy have already caused particularized and concrete injury to Zayo.  Specifically, Zayo's attempt to build its business in Ohio has been irreparably harmed because Defendants' actions have made it impossible for Zayo to install new fiber optic facilities to meet obligations to and serve its customers.

123.   Defendants' *de facto* moratorium on right of way permits to Zayo over the last 18 months has already caused it to suffer particularized, concrete, and irreparable harms, and its continuation of that moratorium under its new compensation policy will ensure those harms continue.

124.   Zayo indeed has long-standing and serious contractual obligations to build facilities and provide service to customers.

125.    Most immediately, Zayo is required to expand capacity and services to at least three of its key customers by approximately March 31, 2022.  Zayo cannot do so overnight or on the fly – building fiber facilities is a complex, time-consuming, and expensive endeavor, involving extensive planning, careful coordination, and risk.

126.    As a result of ODOT's moratorium, Zayo is way behind in meeting these service and capacity deadlines, and to do so now, it must immediately begin construction of new facilities and install additional fiber optic telecommunications networks along public rights of way identified in its permit applications.  If Zayo cannot meet its commitments, Zayo's relationships with current and prospective customers will be jeopardized, and it will suffer concomitant harm to its goodwill, reputation, and market and competitive position.

127.    These harms are all irreparable and Zayo lacks an adequate remedy at law.  That is especially so given that, while Zayo has been denied access to public rights of way to extend facilities and provide service, its direct competitors have been allowed to access and maintain facilities in those same rights of way.

128.    For 18 months, Zayo has tried amicably to resolve the parties' dispute to no avail. Left with no other option, Zayo, once again, reluctantly turns to this Court to force Defendants to comply with federal law.  Without judicial relief, Zayo will continue to suffer grave and irreparable harms.

## CLAIMS FOR RELIEF

### COUNT I
**(Preemption Under 47 U.S.C. § 253(a))**
**(Against Marchbanks)**

129.    Zayo realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 as if fully set forth herein.

130.     Article VI, Clause 2 of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

131.     Federal courts have jurisdiction to enjoin state officials from interfering with federal rights.  *See Ex parte Young*, 209 U.S. 123, 160–62 (1908).

132.     In order for a claim to fall within the doctrine of *Ex parte Young*, "a claim must seek prospective relief to end a continuing violation of federal law."  *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

133.     As the Supreme Court has held, "[a] plaintiff who seeks injunctive relief from state regulation" or action, on the ground that such action "is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).

134.     The Act prohibits a state government from enacting or instituting any "State or local legal requirement [that] may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."  47 U.S.C. § 253(a).

135.     The FCC has recognized that 47 U.S.C. § 253(a) prohibits *de facto* moratoria, including "state or local actions that are not express moratoria, but that effectively halt or suspend the acceptance, processing, or approval of applications or permits for telecommunications services or facilities in a manner akin to an express moratorium."  *In re Accelerating Wireline Broadband Deployment By Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 7705, 7780, at ¶ 149 (Aug. 3, 2018).

136. A *de facto* moratorium indeed exists when "applicants cannot reasonably foresee when approval will be granted because of indefinite or unreasonable delay." *Id.* at 7782, at ¶ 151.

137. Marchbanks has refused to act on Zayo's permit applications for 18 months and provided no reasonably foreseeable date of action on its applications under its new compensation policy.

138. Marchbanks' chronic inaction and delays constitute constructive denials of Zayo's permit applications and a *de facto* moratorium as applied to Zayo.

139. Marchbanks' new fee-based policy further constitutes a *de facto* moratorium.

140. In prohibiting Zayo's proposed deployment of telecommunications services by refusing to act on its right of way permit applications within a reasonable timeframe and constructively denying its permit applications, Marchbanks has imposed an unlawful moratorium that has effectively prohibited Zayo from providing interstate or intrastate telecommunications services.

141. As a condition of access to Ohio's public rights of way, Marchbanks has imposed requirements on Zayo that have the effect of prohibiting it from providing any interstate or intrastate telecommunications service, including but not limited to, coercing Zayo to participate in the new policy's undefined and unlawful compensation program and requiring Zayo to agree to extortionate conditions that are dictated exclusively by Marchbanks.

142. That policy and resulting moratorium violate and are therefore preempted by 47 U.S.C. § 253(a).

143. Zayo is suffering and will continue to suffer irreparable harm as a result of Marchbanks' continuing violations of 47 U.S.C. § 253(a).

144.    Marchbanks' violations have prevented Zayo from being able to meet build out milestones under contracts with current customers, which will in turn harm those customers' ability to provide critical communications services.

145.    This will further result in Zayo losing current and prospective customers to competitors and suffering irreparable harm to its goodwill, reputation, and market position, among other serious and irreparable harms.

146.    Accordingly, Zayo is entitled to prospective declaratory and injunctive relief enjoining Marchbanks from violating Zayo's federal rights.

**COUNT II**
**(Violation of 47 U.S.C. § 253(c))**
**(Against All Defendants)**

147.    Zayo realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 as if fully set forth herein.

148.    Section 253(c) of the Act provides that "[n]othing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government."  47 U.S.C. § 253(c).

149.    Section 253(c) of the Act authorizes a private right of action in federal court for telecommunications providers against state governments that violate this Section.  *See, e.g.*, *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 624 (6th Cir. 2000).

150.    Rights of way management under Section 253(c) means control over the public rights of way itself, not control over companies with facilities in the right of way.

151.    The FCC has interpreted the "competitively neutral" and "nondiscriminatory" requirements of Section 253(c) to apply to the management of rights of way as well as compensation-based policies.  *See Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1272 (10th Cir. 2004); *TCG v. City of Dearborn*, 977 F. Supp. 836, 840–41 (E.D. Mich. 1997), *aff'd*, 206 F.3d 618 (6th Cir. 2000) ("[T]he explicit language of 253(c) [states] that local governments, although retaining the right to manage" their public rights of way, "must do so fairly and 'on a competitively neutral and non-discriminatory basis.' " (quoting 47 U.S.C. § 253(c)).

152.    Thus, "allowing regulations regarding the management of rights-of-way to be discriminatory and not competitive would clearly undermine the [statute's] goal of free competition." *Qwest Corp.*, 380 F.3d at 1272.

153.    Defendants have previously granted permits to telecommunications providers for, or otherwise allowed to use, maintain, construct, and/ or access the areas of Ohio's public rights of way like those described in Zayo's permit applications.  *See* Ex. A, at 5–6.

154.    Meanwhile, Defendants constructively denied Zayo's permit applications through inaction and delays for almost two years to access the same rights of way to which its competitors were provided access.

155.    Defendants' implementation of its compensation policy also constitutes a discriminatory and constructive denial of Zayo's permit applications by refusing to act on Zayo's permit applications or provide any reasonable timetable for decision-making, while Defendants have already granted free access to other telecommunications providers for the same rights of way.

156.    The broad discretion vested in Defendants under the compensation policy to determine whether a telecommunications services provider's consideration for access to the

rights of way will consist of undefined contributions or an arbitrary and exorbitant annual fee further violates Section 253(c) because it allows Defendants to engage in disparate treatment of telecommunications providers.

157.    Defendants have failed to articulate any clear guidelines or criteria for the determination and terms of compensation that telecommunications providers, like Zayo, must pay under the compensation policy.

158.    Rather, Defendants wield sole and unfettered discretion to act on permit applications and demand any broad in-kind compensation or arbitrarily determined fees on Zayo to access rights of way that have no bearing on or relationship to the management of Ohio's public rights of way.

159.    Accordingly, Defendants' compensation policy violates Section 253(c). *See Peco Energy Co. v. Twp. of Haverford*, No. 99-4766, 1999 WL 1240941, at *6 (E.D. Pa. Dec. 20, 1999) (holding ordinance invalid under § 253(c) where government had complete discretion over whether to grant telecommunications providers access to public rights of way "without providing any guidelines for how that decision should be made").

160.    Defendants' requirements imposed on Zayo as a condition of access to public rights of way, including but not limited to, coercing Zayo to participate in Defendants' resource sharing policy in order to access the rights of way, forcing Zayo to agree to discretionary and/or extortionate conditions for such access that are dictated exclusively by Defendants, requiring Zayo to compensate Defendants based on vague and poorly defined standards, and imposing on Zayo "quid pro quo" compensation requirements that are more burdensome than those imposed on other certified telecommunications providers, violate 47 U.S.C. § 253(c).

161.    Zayo has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of Section 253(c).

162.    By discriminating against Zayo, Defendants have impeded Zayo's ability to provide mission-critical telecommunications infrastructure and services to current and prospective customers in Ohio.

163.    Defendants have further impeded Zayo's deployment by imposing an arbitrary and sweeping compensation policy that grants them sole discretion to act on permit applications and demand any broad in-kind compensation or arbitrarily determined fees from Zayo to access rights of way that have no bearing on or relationship to the management of Ohio's public rights of way.

164.    As a result, Defendants have jeopardized Zayo's ability to maintain current customers and attract prospective ones, which will further result in harm to its goodwill, reputation, and market position, among other serious and irreparable harms.

165.    Zayo is entitled to injunctive and declaratory relief to remedy Defendants' violations of Section 253(c).

<u>**COUNT III**</u>
**(Violation of Procedural Due Process – U.S. Const. amend. XIV, § 1)**
**(Against Marchbanks)**

166.    Zayo realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 as if fully set forth herein.

167.    Pursuant to 42 U.S.C. § 1983, Marchbanks is liable for injunctive and declaratory relief for violations of the Due Process Clause of the Fourteenth Amendment.

168. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

169. Zayo has a protectable property interest in the telecommunications facilities it has installed throughout Ohio.

170. Zayo has entered contracts to provide network capacity in Ohio. Pursuant to these contractual relationships, Zayo submitted permit applications to install telecommunications infrastructure in public rights of way for approval to ODOT.

171. Defendant Marchbanks is a state actor.

172. Marchbanks improperly delayed approving Zayo's permit applications for more than 18 months, which constitutes a constructive denial of its permits.

173. After Zayo's permit applications were pending for 18 months, Marchbanks further constructively denied Zayo's permit applications on November 4, 2021, by retroactively implementing an unlawful and discriminatory policy to force Zayo to agree to unlawful and extortionate compensation terms to access Ohio's public rights of way.

174. Marchbanks has provided no lawful basis for the constructive denials of Zayo's permit applications.

175. Marchbanks has further failed to provide Zayo adequate procedural rights to challenge the constructive denials of its permit applications.

176. Acting under color of law, Marchbanks constructively denied Zayo's permit applications without due process of law in violation of the Fourteenth Amendment.

177.    As a direct and proximate result of Marchbanks' violations of Zayo's procedural due process rights under the Fourteenth Amendment, Zayo has suffered harm that cannot be remedied at law, including deprivation of its constitutional rights.

178.    Zayo has been deprived of use of its protectable property interest in its telecommunications facilities without due process of law.

179.    If Marchbanks continues unlawfully to bar Zayo from accessing Ohio's public rights of way, Zayo will continue to be irreparably harmed by these violations of its procedural due process rights.

180.    Zayo is entitled to injunctive and declaratory relief and attorney's fees and costs, as set forth in its Prayer for Relief.  *See* 42 U.S.C. §§ 1983 & 1988.

## COUNT IV
### (Declaratory Judgment Under 28 U.S.C. § 2201)
### (Against All Defendants)

181.    Zayo realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 as if fully set forth herein.

182.    An actual controversy has arisen and now exists between Zayo and Defendants regarding Defendants' compliance with federal law.

183.    Zayo disputes the lawfulness of Defendants' refusal to provide reasonable and nondiscriminatory access to Ohio's public rights of way, their interference with Zayo's right to access public rights of way, their issuance and retroactive implementation of the compensation policy, and their constructive denials of Zayo's permit applications.

184.    Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate under these circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Zayo prays for this Court to enter judgment against Defendants, granting the following relief:

1.      Declarations that:

- Marchbanks' delay and inaction in processing Zayo's permit applications and subsequent implementation of a policy that effectively bars Zayo from deploying its telecommunications services operates as a constructive denial of Zayo's permit applications and constitutes a *de facto* moratorium against Zayo that has had the effect of prohibiting Zayo's ability to provide interstate or intrastate telecommunications services, in violation of 47 U.S.C. § 253(a);

- Marchbanks' compensation policy constitutes a *de facto* moratorium against Zayo that has the effect of prohibiting Zayo's ability to provide interstate or intrastate telecommunications services, in violation of 47 U.S.C. § 253(a);

- Defendants' constructive denial of Zayo's permit applications where Defendants have refused timely to act on Zayo's applications while granting other telecommunications providers access to the same rights of way violates and is preempted by the Supremacy Clause of the United States Constitution and by 47 U.S.C. § 253(c);

- Defendants' requirements imposed on Zayo as a condition of access to public rights of way, including but not limited to imposing the new policy, requiring Zayo to compensate Ohio based on vague and undefined standards, and imposing on Zayo "quid pro quo" compensation requirements that are more burdensome than those imposed on other certified telecommunications providers, violate 47 U.S.C. § 253(c); and

- Marchbanks' constructive denials of Zayo's permit applications without adequate procedural safeguards violate Zayo's due process rights in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §§ 1983 & 1988.

2.      An injunction:

- Enjoining Defendants from denying access to, or interfering in any way with Zayo's ability to access Ohio's public rights of way and with Zayo's abilities to provide communications services to its customers;

- Enjoining Defendants from engaging in any discriminatory and competitively biased management of Ohio's public rights of way against Zayo;

- Enjoining Defendants from implementing the November 4, 2021, compensation policy; and

- Ordering Defendants to grant Zayo's permit applications.

3.     Award Zayo reasonable costs and attorneys' fees, to the fullest extent permitted by law, including but not limited to those recoverable under 42 U.S.C. §§ 1983 and 1988; and

4.     Award Zayo any and all additional relief that the Court deems just and proper.

Dated:  November 12, 2021                    Respectfully submitted,

_s/Brian M. Garvine_
Daniel R. Mordarski (0063228)
Brian M. Garvine, Of Counsel (0068422)
Law Offices of Daniel R. Mordarski LLC
5 E. Long Street, Suite 1100
Columbus, Ohio 43215
Tel: (614) 221-3200
Fax: (614) 221-3201
dan@mordarskilaw.com
brian@garvinelaw.com
_Trial Attorneys_

Paul A. Werner (_pro hac vice_ to be filed)
Imad Matini (_pro hac vice_ to be filed)
Sheppard, Mullin, Richter & Hampton, LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006
Tel: (202) 747-1900
Fax: (202) 747-1901
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

David M. Poell (_pro hac vice_ to be filed)
Sheppard, Mullin, Richter & Hampton, LLP
70 W. Madison Street, 48th Floor
Chicago, Illinois 60602
Tel: (312) 499-6300
Fax: (312) 499-6301
dpoell@sheppardmullin.com
_Counsel for Zayo Group, LLC_

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the statements contained in the Complaint related to Plaintiff Zayo Group, LLC, are true and correct to the best of my knowledge and belief.

Gillian Leytham, Esq.
Vice President, Underlying Rights &
Government Relations - North America
Zayo Group, LLC

Executed on: 11/11/2021